*480]    *The jury were of the same opinion, and found a verdict for the plaintiff with 60l. damages and 6d. costs.

Mr. Tilghman, *pro quer.*

Messrs. Moylan and S. Levy, *pro def.*

Cited in 5 S. & R., 130; 8 S. & R., 501; 9 S. & R., 338; 4 Rawle, 290; 6 Wh., 422; 11 Pa., 385, to show that the doctrine of market overt does not exist in Pennylvania.

## Mary Jones *against* Samuel Ringold.

Interest is due on a parol award for the sum awarded.

INDEBITATUS *assumpsit.* Pleas, *non assumpsit* and payment.

It appeared that the plaintiff had boarded and lodged the defendant and his family for some time; and a dispute arising about some of the items of the account, it was submitted to arbitrators by parol, who struck off 11l. from the plaintiff's claim, and awarded 55l. 1s. 4d. to be paid by the defendant.

The court informed the jury, that they should give a verdict for that sum and interest from the time of the award. It was equivalent to a (Vid. 3 Wils. 206.   2 Vez. 365) settled account between the parties.

Verdict for the plaintiff for 58l. 7s. 4d. damages.

Mr. Hallowel, *pro quer.*    Mr. S. Levy, *pro def.*

## Respublica *against* Samuel Richards.

S. C. 2 Dall. 224.

The 7th sec. of the act of 29th March 1788, extends not to the case of a sojourner forcibly carrying off his slave.

Where a corporation are parties, or immediately interested in the question, a member of it cannot be a juror or witness.

If the commonwealth proves acts of violence or fraudulent seduction of a negro in this state, other acts of violence or frauds in another state may be proved to shew the intention of the defendant.

INDICTMENT, misdemeanor.    It contained two counts under the act of assembly of 29th March 1788.   2 Dall. St. Laws, 589.   1st, That the defendant by fraud seduced negro Toby into New Jersey, with a design and intention of selling him as a slave.   2d, That he caused him to be seduced into New Jersey with such design, &c.

Before the jury was sworn, it was admitted that the prosecution was carried on by the society for the abolition of slavery, incorporated 8th December 1789, by law.  Thereupon the defendant's counsel insisted, that none of the members of that society should be received as jurors.

[Respublica *v.* Richards.]

By the Court. If a body politic or corporate bring an action that concerns their body, and if a juror be of kindred to any that is of that body, it is a principal challenge. Co. Lit. 157. a. *Where a corporation are parties or immediately interested in the question, no freeman can be [*481 either a juror or witness. 3 Keb. 12, 295. 3 Burr, 1855. The objection to the members of this society is relevant.

One Isaac Cox, a witness on the part of the commonwealth, was proceeding in his testimony with respect to a violence committed by the defendant on the negro in New Jersey, but was stopped by the counsel, who contended, that the crime must be proved where laid. 2 Haw. 236. This court has no jurisdiction of an offence committed in Jersey; the laws of that state alone are competent to redress injuries done there.

The court observed, that the witness might give evidence of the defendant's acknowledgments in a sister state, and after the prosecutors had by way of ground work proved acts of violence or fraudulent seduction in this state, they might go on to shew other acts of violence or fraud in New Jersey, to evince the *quo animo* of the defendant, which was done accordingly.

The facts on the evidence turned out to be these: The negro was the slave of general John Sevier, of the South Western Territory, and was purchased and retained by him as such for eight or nine years. He was put under the custody of major Sevier his son, to attend him on a visit to Philadelphia, in the month of January 1794. In April following, shortly before the major's return home, Toby absconded, but being discovered, was sent over into New Jersey. Major Sevier, and the defendant his brother in law, also crossed the Delaware. The negro attempted to escape from them, but was pursued, and being overtaken, was struck several times by both, and was sent against his will to Gloucester, and from thence to his master's place of abode by the defendant. The defendant acknowledged, that he had sent the negro over into Jersey to compel him to return home.

Messrs. Lewis and Hallowell for repub. contended, that the defendant was obnoxious to the penalties of the 7th section of the act of 29th March 1788. The legislature intended to remedy the evils arising from the practice of drawing negroes or mulattoes out of the state by force or fraud, and then selling them as slaves in other places. They preferred preventive to vindictive justice, and designed to put those unhappy people of colour in a better situation in this instance than whites, because the system of kidnapping the latter had not obtained amongst us. When a negro or mulatto slave or servant misbehaved, recourse should be had to the constituted authorities. The trouble to which masters would be subjected in this mode would be *insignificant, when [*482 contrasted with the injurious consequences which must

[Respublica *v.* Richards.]

flow from their taking the reins into their hands solely. In other countries, a black or sable hue were deemed presumptions of slavery: happily here it is otherwise. There is no ambiguity in the penning of this law. In all the sections preceding the 7th, where negroes or mulattoes are spoken of, they are described as slaves or servants, but this clause has no such distinguishing characters. The words are, any negro or mulatto generally, which will comprehend as well slaves and servants, as freemen of that colour; and this more fully appears by the report of the committee of the house of assembly on the 8th March 1788.

Where the law is known and clear, though inequitable and inconvenient, judges must determine as the law is. The legislature only can remedy the mischiefs. Vaugh. 37, 285. Usage against the obvious meaning of a statute, is rather an oppression of those concerned, than an exposition of the act. Vaugh. 170. Where the law is doubtful, arguments from inconvenience will apply, but not where it is clear and precise. 1 Burr. 100. Where the words of an act are clear and express, it must be judged of accordingly, unless such construction would be inconsistent with, or contradictory to a subsequent clause.

The counsel for the prosecution therefore concluded, that whether negro Toby was a slave or freeman, his case was not distinguished by the act.

The court stopped Messrs. J. B. M'Kean and Porter, the counsel for the defendant, from going on, and observed to the jury, that they should be very sure of the intention of the law, before they convicted the defendant. The necessary consequence of a conviction must be, the payment of a fine of 100l. a confinement at hard labour for not less than six months, and the payment of costs.

The 10th and 11th sections of the act for the gradual abolition of slavery, passed 1st March 1780, and other laws, besides the 2d section of the act in question, contemplate domestic slaves attending upon persons passing through or sojourning in this state. If such slave should run away, and afterwards be taken up, may he not by force be compelled to return to his duty, without recurring to any constituted authority? May he not be persuaded to go to another place? And what law is there to prevent such sojourner from sending his slave to another state, and there keeping or selling him? None of the municipal laws of this commonwealth in our idea prohibit such conduct. The construction contended for on the part of the prosecution, would *soon put an end to slavery as well as servitude. If the legislature had intended by the law before us, to prevent the slaves of sojourners from being carried by force to other places, or being prevailed on to remove thither, they would have plainly expressed such intention in direct terms. The obser-

[Respublica *v.* Richards.]

vation that slaves or servants are not mentioned in the 7th section, has little weight. To suppose that the object of the provision reached slaves, would be contradictory to the manifest meaning of the 2d section preceding in the case of a sojourner. The great design of the clause was to prohibit, under a severe penalty, the nefarious practice of violently forcing or fraudulently seducing a free negro or mulatto to other places, with the wicked intention of selling or detaining him as a slave. The more comprehensive exposition, so warmly pressed on the part of the state, reminds us of the attempt under the Bolognian law mentioned by Puffendorf, which enacted, "that whoever drew blood in the streets should "be punished with the utmost severity," that a surgeon who opened the vein of a person that fell down in the street with a fit, had incurred the penalty of the law:—But after long debate, it was held not to extend to the surgeon! 1 Bl. Com. 60.

But even admitting that the negro was a free man, the evidence will not reach the defendant. It does not appear that he seduced him into Jersey, or even spoke to him for that purpose in this state. His young master, major Sevier, had compelled him to cross the Delaware, to secure his return to his father's service, and a civil magistrate, if applied to, would have aided him in this lawful act.

The court were so clearly satisfied, that there were no legal grounds of conviction, that they thought it would have been a waste of time to hear the arguments of the defendant's counsel.

Verdict, not guilty.